The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, ladies and gentlemen. We have five cases on the calendar this morning. Three are not being argued and are submitted in the briefs. Two are being argued and on this day when we have snow flurries in Washington, two cases being argued are Windy City and rain computing, all coincidental, of course. In any event, our first case is Windy City Innovations v. Facebook, 2020, 1153. Mr. McCarty, please proceed. Good morning and thank you. This is Warren McCarty on behalf of the appellant, Windy City. May it please the court. The patent claims at issue in this case claim subject matter that is patent eligible. Professor Daniel Marks, the inventor, solved a uniquely technical problem with a technical solution in 1996. The problem explained in the specification is as follows. Real-time messaging was not yet developed for the open Internet because the Internet to that point was structured for one-way message delivery like email. The solution was to develop client and server software capable of running inside of a web browser to open up access to real-time messaging outside of the walls of a particular Internet service provider like America Online. Mr. McCarty, this sounds like a 103 argument. The claims, which are closed as an apparatus claim, simply recite the idea, abstract idea of communicating a message from a sender to a recipient via a computer network where the recipient obtains the means to display the message. Why wasn't the district court correct? Thank you, Your Honor. The district court offered that as the allegedly abstract idea, communicating a message from the sender to a recipient via a computer network and the recipient obtaining a means to display the message. This oversimplifies Claim 19 of the 245 patent in a number of ways. The first is this abstraction entirely excises from the claim, the controller computer, which establishes a communicative connection that's at line 11 of the claim and connects to the participator computer's responsive to log in. Figure 4, the algorithm disclosing Figure 4 of the patent, explains exactly how to create this connection. By running a controller loop on the controller computer and allowing the participator computers to connect in real time. In other words, you're putting multiple computers in. Why does that change the fact that information is being passed and that's abstract? That changes the entire complexity of the claim because up until that point on the open internet, it was structured for one-way communication analogous to email where a user would send a message to a server and store it where another user could log in and download that message. By introducing the controller computer to arbitrary messages and communicatively connect participator computers in real time, this unlocked the ability for participator computers to send and receive messages in real time. This abstract idea, allegedly brought by the district court, is also entirely excising from the claim the inventive aspect of multiplexing and demultiplexing media. This is the manner in which the 245 patent overcomes the challenges of the prior art by... But counsel, the problem is the claim doesn't cover multiplexing, doesn't mention it at all. That's correct. The claim does not use the word multiplexing, but in the recent Unilock case in 2020, this court said that the claim doesn't need to say this is the benefit of the invention in the claim. That's not the benefit. Multiplexing is the method of achieving the real-time transfer. The way in which Claim 19 does claim multiplexing is as follows. At line 32 and 33 of Claim 19 in column 23, the claim is describing or reciting the communication which originates from the first participator computer. This communication, as defined in Claim 20, includes pre-stored data. At line 16, the first participator computer is programmed to send a private message to the controller, which includes a pointer in it, which is separate from the pre-stored data. In this way, this is exactly what's described in Figure 2 and supported in Figure 4, the algorithm in Figure 4, as separating the data itself, the content, the graphic, the sound file, what have you, from the message, the private message, by using a pointer. And this is something that unlocked the ability to send and receive information in real time. So the word multiplexing, indeed, is not in the claim. It's in none of the claims. Instead, what is taught or recited in the claims is the way in which the media is separated from the message with the pointer as a way to communicate in real time. And that's exactly what's disclosed and taught and recited in Claim 19 and supported in the specification. The court's allegedly abstract idea of communicating a message from one to another also entirely removes or replaces the claims' Internet network with the generic concept of a computer network. The court introduced the word computer network. This is something that specifically is distinguished as the prior art in the patent specification. So this abstract idea is oversimplified, and it excises most of the claim limitations from the claim itself. Another issue with the district court's opinion is it disregarded the specification's teaching in concluding that the claims were abstract. The court said, Specification cannot stand in for the details not stated in the claim itself. While the detailed specification does not make an abstract claim eligible, it must inform the Step 1 inquiry. That's EnFISH. Again, that's the Uniloc case from 2020. But at every turn, the district court sort of discredited the specification's teachings in a way that created an impossibly high bar for any patent to survive LS scrutiny. A prime example is at page 22 of the district court's order, where it concluded that, unlike the specification, Claim 19 does not state any multiplexing features. This, I think, appears to blend some version of Section 112 with the 101 inquiry. The multiplexing described in the specification, Figure 2, for example, is exactly that which is claimed in Claim 19 with respect to the separation of the media, the sound file or the graphic file, from the message, and delivering a pointer in a private message that is distinct from the pre-stored media itself. Again, that's supported in Figures 2 and Figures 4. Council, do you want to address the cross-appeal with jumping ahead of things? But this gives you an opportunity to address the cross-appeal. Um, so, from a, um, so, I'm sorry, I think I missed the question. Uh, as a matter of fact, uh, I'm confusing two cases, and so I withdraw the question. Okay. Um, thank you, Your Honor. Um, uh, I want to switch gears just a little bit in, uh, in my time to address one additional issue, which is the question at Step 2. Um, one, one issue that I think this case, um, illustrates is, um, whether or not the inquiry at Step 2 should or should not be distinct, um, between 101 and, and 102 and 103. Um, they either need to be distinct or not. In this case, the district court kind of did the worst of all worlds, which is treated 102 and 103 analysis as relevant to Step 2, but only accepted evidence from the defendant on 102 and 103, and, and did not accept evidence from the plaintiff. Which, which evidence are you talking about? When did you attempt to introduce evidence that the district court, um, prevented you from introducing? So, Facebook's experts submitted an expert report addressing, uh, 102 and 103. In response, Winnie City's expert rebutted those 102 and 103 opinions. Uh, those were submitted to the, to the district court at the summary judgment stage. In its district, in the, in its opinion, the district court, as part of its Step 2 analysis, cited Facebook's experts' opinions on 102 and 103 as supportive of its Step 2 decision, but concluded that... Uh, just, just help me make sure I understand the facts. Did Facebook's expert also give a Section 101 opinion? Yes. Facebook's expert also submitted three pages of a 101 opinion, which we contend is improper, uh, under the Atrix case and under, um, uh... Did you object to it at the lower tribunal? We did, and the court overruled our objection. Um... And, and so, but you began this line of inquiry by suggesting that the court considered, um, Facebook's evidence, but refused to consider your ex- uh, evidence. What e- what evidence did you attempt to introduce precisely, and where can I see the... Okay. So, um, at page, uh, at page 20 at note 12 of the district court's opinion, uh, the court relies on, this is in the Step 2 analysis, paragraphs 163 through 182 of Facebook's experts' invalidity report. Um, this is not Section 101 opinion. This is obviously... The question, the question, the question was, what did you try to introduce under 101? My recollection, Judge Dyke, my recollection is that you said you didn't have anything to introduce on 101. We, we did not submit specific expert testimony, uh, in rebuttal to the three pages of 101, um, uh, expert testimony. What we did submit was the evidence in the specification, testimony from the inventors, uh, and, uh, the prosecution history, including the notice of allowance, which allowed the Claim 19 specifically for the reasons that it was, uh, sending real-time communications and, uh, doing the separation of, uh, pre-stored data with pointers. Um, so, we did submit evidence. As it relates to the specific 101 opinion that Facebook's experts submitted, the three pages, um, we believe and objected to that as a conclusory. It's, uh, essentially a number of paragraphs that go through each claim element in isolation and say, well, this is, uh, well-known or this was generic. You were arguing that you were prevented from introducing evidence. I, I just don't see that. We... Sorry, if I moved... You told the district court that you didn't have anything to submit. So, um, a couple responses to that. We weren't, um, refused, uh, or, or not allowed to submit evidence. Um, what, what happened was, um, two things. First is, um, we submitted an expert report in response to the 102 and 103 opinions. The court considered Facebook's 102 and 103 opinions as relevant to Step 2 and said that our 101, 102 and 103 opinions were not relevant to Step 2 and, and said that we did not have evidence of, of, of, uh, any inventiveness. So, there was a, there was a sort of a discord between the court allowing 102 and 103 evidence from Facebook's standpoint, but not considering our 102 and 103 evidence from our expert. Now, as it relates to the 101 opinion, the three pages from Facebook's expert, it's true that, um, Dr. Jones, Winnie City's expert, did not rebut that. Um, we did provide evidence... Counsel, one of the problems is you keep saying we provided evidence, we provided evidence, we provided evidence. But if I remember, uh, when you, when the documents that you prepared were submitted to the district court, you left, uh, entirely blank, uh, things related to number 30 and 31. I think this is on page 97, 93 of the appendix, and you left them completely blank indicating that you do not disagree with those factual assertions, uh, and those were the factual assertions that were part of these fact questions on step two. You neither, uh, you neither objected to them, disagreed with them, nor listed any evidence. And, and then the bigger problem is this was brought to your attention by the other side in its briefing where they put all of that information in bold in, in their filing with the lower court, and you still didn't seek to correct the evidence. And then you got to the hearing that was pointed out again, again, that you didn't submit any evidence or even, uh, reject those assertions. And that was when for the first time somebody, uh, representing Windy City said, well, that might, must have been a typo. But even then, there was no request to submit evidence. Uh, the district court didn't issue its opinion for five months thereafter at no point was there a request to submit evidence. I, I mean, I guess I'm, I'm sort of thinking that you're demanding the district court be held to a ridiculously high standard, which is the district court met that you had evidence in the record that you wanted it to consider. And it should have understood despite the fact that you did not, um, contest those fact findings that you nonetheless did. And, and I, that just doesn't feel to me like a standard I can hold a district court to on appeal. So why don't you tell me why that's not correct? So, um, the two, the two issues you've raised were, um, fact 30 was, um, was undisputed. Um, I think this got twisted a little bit. Um, there was, there was no actual listing of undisputed at fact 30, but there is no dispute that fact 30 was, um, was agreed to. The fact 30 that's at issue is the hardware, um, in the written description was routine and conventional. The, the patent actually makes clear that that's absolutely true. Um, and, you know, the invention is a software invention under cases like, uh, Unilock and NFISH. Those make clear that software improvements are not defined by particular physical features. And so what happened with fact 30 is that, um, I'll reserve my time. Well, you can, you can finish your sentence to your thought. Yeah. So, um, yes. So fact 30 is, um, an interesting one because it's not disputed, um, but we think it's inconsequential. And so, you know, the fact that we did not dispute it became sort of a hot issue at the district court. You also didn't dispute fact 31, which is the fact that your invalidity expert didn't offer any opinions relevant to the 101 inquiry. And you didn't dispute that. So now your complaint to us is the district court should have considered your experts opinions on 102 and 103 in the context of 101. But fact 31 was that your expert didn't actually provide any opinions relevant to the 101 inquiry. And you didn't dispute that. So how, when you, when you take your expert off the table yourself, why is the district court erroneous for then not considering your expert? Um, fact 31 is specific to invalidity under 35 USC 101. And Dr. Jones, Windy City's expert, did not have a section in his report responding to the three pages from Facebook's expert specific to 101. One of the reasons why he did not do that is the prior art that Facebook's expert was listing in his 101 section, those three pages, was the prior art that the patent trial and appeal board had considered in the, in Facebook's IPR and determined did not render obvious the claim 19 of the 245 patent. Counselor, you wanted to reserve some time, but it's all consumed. We'll give you two minutes to rebuttal after we hear from Ms. Keefe. Thank you, Your Honor. Heidi Keefe on behalf of FA Facebook. Your honors have hit directly on, I think, what are the biggest problems with the arguments put forward by Windy City. They first tried to argue that the claim is somehow not abstract because of elements that aren't within the claim itself. What we see in both the blue and the gray brief is that they point to the non-abstraction as being all related to the concept of this single channel and the out-of-band communication, and that's in the blue brief at three and the gray brief at two. We hear today that it's actually multiplexing, which itself is also not in the claim itself. Instead, in fact, with respect to the out-of-band communication that they claim takes it out of the realm of the abstraction, the out-of-band communication is separately claimed in Claim 30, a dependent claim that is not at issue in this case, was never asserted. In fact, this puts this case directly on all fours with the Berkheimer decision, which finds that even if you may have a dependent claim that may give more detail, that may take it out of the realm of the abstract, but that leaves the independent claim clearly in the abstraction. As Judge Lurie pointed out, the abstraction here is correct. It's simply the concept of having messages sent between two people and then figuring out whether or not you need something in order to display that message. Respectfully, the argument that this is not abstract does not hold water and, in fact, has to relate to things like Figure 2, Figure 4, and other non-claimed elements. That doesn't change anything. The district court properly appreciated that down below. Counsel, this is Judge Moore. Opposing counsel is pointing to Figure 2 and Figure 4 and the algorithms therein, but the claim terms are not themselves 112.6, right? This isn't a situation where we look to the spec and the structure in the spec is imported into the claim. Isn't that right? That's exactly correct, Your Honor, and that's why ENFISH doesn't apply here at all because in ENFISH, as Your Honor knows, there was a means-plus-function claim which did require you to look to the specification to draw in those features. These real-time communications could be achieved through multiplexing or any other mechanism. We don't know, and the claim broadly covers all such mechanisms, so even though multiplexing is one way in which it could be achieved as close to the spec, that isn't imported into the claim. Is that your argument? That is absolutely our argument, Your Honor, and in fact, the specification clearly indicates that real-time communication was actually common at the time. It actually cites to AOL with its instant messenger chat and indicates that that was something that did exist at the time, and so that, again, agrees with Your Honor. The next point that was raised by Windy City had all to do with whether or not their evidence, and I apologize, I'm using air quotes around the word evidence, was considered by the court, and the court very carefully indicated that there was no admissible evidence that had actually been presented, but despite that, the court, and I quote on Appendix 20, this is page 18 of the order, nevertheless considered whether counsel's arguments warrant denial of the motion, and the arguments that had happened during the oral argument all revolved around whether or not the court should be considering all of their 102 and 103 invalidity positions, and the court said very clearly, and again, this is at Appendix 20, page 18, that there was a conflation here of the notions of novelty and eligibility that did not change this case, and that's at line 23. Windy City has confused novelty with inventiveness, and then the court cited to the Solyutran and synopsis cases, indicating that that's actually not the appropriate test, and the last thing I'd point out, Your Honor, counsel, the one question I have about this is, in the second factor, one of the things we're supposed to look to is the ordered combination, and I mean, if there were statements by one of the experts that, even though made in the context of Section 102, made it clear that one particular element was, for example, completely novel and existed in no other prior art, don't you think that that is something that could be or should be considered in the context of the 101 analysis under Step 2? Again, theoretically, Your Honor, that is true, and in fact, that's exactly what Dr. Storer did in his 101 analysis, which is actually in the record and cited by both the judge and by Facebook during its arguments, and he actually specifically pointed out that these are the claim elements, both individually and in combination, were, in fact, routine and conventional, and he even cites to the notion of real-time being routine and conventional, and that's in Storer's expert report in Appendix 78, 56 through 57, Paragraph 223. When Windy City argued that it submitted its expert report, it never cited even one thing from its expert report. It simply lodged those scours every single piece of that expert report, not knowing anything about what it wanted it to say or do, and that simply was never put before the court. There was absolutely nothing. So if Your Honor is hypothetical, if there were a piece of evidence that was properly before the court where an expert said, but I find this particular element not to be routine and conventional, even if it's in a 102 or 103 report, I agree that that might be relevant, but here, there is absolutely no such thing in the record, and the court properly acknowledged that, and even despite acknowledging that, said that it would consider the arguments and found them to be lacking, and so the court did its job. It went beyond its job to even considering the arguments that were presented and found that in this particular case, they did not change the decision. Counsel, what about the notice of allowance? Did they explicitly reference that, either in their opposition to the summary judgment or in the factual statement? Did they reference that anywhere? They did reference it in their argument. They referenced it as something that they said should be taken into consideration, but didn't point to anything specific within that that would change the analysis, and I admit, Your Honor, that there's nothing. Well, notice, first of all, Ms. Keith, notice of allowance is a paragraph long, so I mean, I'm not sure the district court would have really been, you know, out to sea with no paddles when they pointed to it, wondering what they meant. I mean, the notice of allowance is like a single paragraph where, I believe, if I remember right, the real-time limitation is what is expressly called out. Is that a fair characterization? I think that's an overly generalized characterization because it says real-time within the context of all of these other things, which, again, goes to novelty here. That is not saying that real-time itself is not potentially conventional or routine in other aspects. It's with respect to everything else, and that's a novelty analysis. That is not a routine or conventional for the notion of real-time itself. Well, but in the context of 101, they point to the notice of allowance that sort of indicates there's something allowable about the real-time inclusion in the claim as, you know, not appearing in the prior art or is somehow novel, and then I just don't remember seeing the district court ever address that in the opinion itself. Did he? Am I missing it? I don't, you know, Your Honor, I'd have to go back and scour. I'm looking at the section right here where the district court was discussing the arguments raised, and I'm not actually sure whether or not she specifically mentioned the file history. She did note that there was nothing that she saw that raised a triable issue of fact other than attorney argument, and so, again, I don't believe that the notice of allowance. But that's not attorney argument, right? That would not be, Your Honor. You are absolutely correct there, but I don't, Your Honor, I don't think that the notice of allowance raises enough of a question because, again, it was never even argued that that was specifically the reason. If you look back to the arguments below, the issue or concept of real-time was never even discussed. In fact, so much so that the court noted that real-time didn't seem to be an issue. That's in the footnote 11, and so it didn't address the dispute between the parties, and rightfully so since the dispute between the parties doesn't change anything about how real-time would be applied or not applied, both parties agreed that it was essentially immediate. The only distinction between the two parties' constructions was whether or not, in Facebook's example, it had to be not stored at a central computer in between. Nothing of that affects the abstraction itself. So in sum, Your Honors, I don't think that there's anything in this record. This court did an unbelievably thorough job of looking to all of the evidence that had been put forward. It didn't change the character of the claims themselves, and now we hear for the first time that, in fact, paragraph 30 of the separate statement was not disputed, and so we actually now know that at 97-57, paragraph 30, that, in fact, the hardware was all routine and conventional. So you have an abstraction, the notion of sending information between two parties, and then figuring out whether or not it needs to be displayed differently on routine and conventional hardware. There's absolutely nothing inventive here, Your Honor, and no mistake was made by the district court. So can I ask you, just following up on the point that I raised before, I just found where I remembered seeing it, and it's in 97-94 in the appendix. That's where I recalled seeing their allegations regarding how the prosecution history notice of allowance provides factual support for their dispute. It starts on 97-93 and carries over to 97-94. So tell me again why it is that you think that isn't sufficient to potentially raise a question of fact about the real-time limitation? Again, Your Honor, I don't think that this is saying that it's just real-time or that it doesn't explain in any way how that takes it out of the realm of eligibility. It just says that in terms of novelty, the prior art failed to teach or suggest real-time communication system with a number of participator computers exchanging messages over the internet, and it uses all of essentially the other concepts that are within the claim itself. So I don't think this raises any question of fact. It absolutely was not argued, and again, that's to me... Well, you can't say it wasn't argued. It's right there. This is argued, actually. It's right here in this document that was submitted on the summary judgment, right? Yes. Yes, Your Honor. I don't think it's fair for you to say it wasn't argued because I'm looking at it. But Your Honor, this is a novelty-type discussion, and so what the Patent Office here is saying is that all of these elements in combination are not there. That does not say that real-time itself was not also... Okay, can you say this is a novelty discussion? I just want to make sure I understand this record. Is this not what they pointed to for their 101 argument? I mean, am I not remembering this right? Do I have it confused? So, Your Honor, this is in response to our summary judgment regarding 101, yes. But what I am saying is that they are conflating, by using this piece of evidence, they are conflating novelty with eligibility. With all due respect, Counsel, I think the Supreme Court already did that. I think, Your Honor, but Your Honor, it's been very clear. All of the Federal Circuit decisions have been very clear that, in fact, novelty is novelty. Well, you know what? Wait a minute, wait a minute. I just want to make sure I take a moment to enjoy that. You think all Federal Circuit decisions have been very clear? You've got to be the only person to hold that view. So, go ahead. No, and Your Honor, I appreciate that there is confusion. What I was saying is that the one point that has been clear through all the decisions is that novelty is a separate consideration from eligibility. That absolutely is. But it can't be, because the Supreme Court expressly told us that that's one of the things you can work into the consideration of the second part of the Alice Mayo prong, right? I mean, isn't that what conventionality and routine and well-known actually goes to? Isn't that really exactly the same inquiry in a lot of ways? Your Honor, I respectfully disagree that it is the same inquiry. While it may have some facets that overlap each other, it is not the same inquiry. And, in fact, the fact that something is novel absolutely cannot confer eligibility. And that's clear even from Mayo that talks about E equals MC squared being something that's incredibly novel and not eligible. Of course, because the reason that's clear is because the novelty can't lie in the abstraction itself. But if there are, in fact, individual concrete claim elements that are themselves not conventional, not routine, and not well understood, couldn't that element be the something else that takes the claim out of the realm of abstraction? Theoretically, Your Honor, it could be. But if we look to even the electric power case, we find that real time is not one of those such things. The simple notion of speeding something up so that it can be done faster, which is all that real time is, is not enough to add eligibility. It actually is the abstraction itself. It's sending the messages right now, just like you and I are talking in real time. So perhaps this would be different if instead of just mentioning real time, suppose multiplexing were, in fact, a new concept. And suppose it was achieving real time through multiplexing. And if that's what they were pointing to in the Notice of Allowance, that their claim expressly covers achieving real time through multiplexing, which had never been done before, then we'd have a different case, arguably possible. Is that right? Yes, Your Honor, that's absolutely correct. Okay, thank you. And I note that my time is up. I appreciate Your Honor's attention. Thank you very much. Thank you, Ms. Keith. Mr. McCarty has two minutes to rebuttal. Thank you, Your Honor. I just want to pick up where it left off with the novelty discussion. And that is exactly the issue at step two in this case, and where I think this court could clarify the novelty versus 101 issue, because the district court relied upon and studied the obviousness and 102 analysis of Facebook's expert. And on the Windy City side, said Windy City had no evidence of any eligibility, notwithstanding the fact that Windy City submitted its expert report rebutting the 102 and 103 analysis of Facebook's expert. And second, and peculiarly in this case, the 101 opinion, the three pages that Facebook's experts submitted, relies upon as some sort of end run around IPR estoppel, the prior art pieces, the references that the PTAB has already considered and determined did not render obvious Claim 19. So, we have two pieces of evidence from Facebook. On the one hand, it's a 101 opinion, which is just the prior art that the PTAB has already said, not obvious. And on the second hand, it's 102 and 103 opinions, which Windy City's expert rebutted. On either side, it needs to be either 102 and 103 are distinct from 101 or not. And if it's not, you can't decide to consider one side's evidence of 102 and 103 and not the others. There has to be a two-way street. If the you have to consider both parties. When you tell the district court that you don't have any 101 evidence, it's hard to fault him for not considering. Your Honor, respectfully, we did not say we had no 101 evidence. We agreed that Windy City's expert, Dr. Jones, did not provide an opinion specific to 35 USC 101. He did not have a corresponding three pages, for example, in his expert report. But he did submit 102 and 103 evidence. And we also submitted additional evidence to create a genuine issue of material fact, including the notice of allowance, the inventor testimony, specification explanation, et cetera. Thank you. I think my time is up. Thank you, counsel. We appreciate the arguments from both counsel and the cases submitted.